Okay, we're now going to go to the argument in two consolidated cases, Jaras v. Equifax and Green v. Experian. You should let us know how you mean to argue them, whether you're going to argue them, how you're going to split up the arguments. Your Honor, the cases themselves deal with similar enough issues that I think I would prefer to distinguish the actual reporting issue. There are two issues here. One is the balances, past-due balances, and then the consumer information indicator. So Jaras deals more with the balance and past-due balance. The consolidated appeal deals with more of the consumer information indicator. But you're going to argue the whole case at once. Is that what you're telling me, or not? Yes, Your Honor. Yes, that was the intent. Okay, and then your opponents are going to split up the argument how? I see. Okay. Now, it's much more orderly, and we appreciate that. There's a tendency to want to split arguments up, which never is helpful. Okay, almost never. Yes, thank you. May it please the Court, Elliot Gale appearing for all the appellants. I would like to reserve five minutes for rebuttal. Okay. What's your time? The central issue that we're here to discuss is when a consumer files bankruptcy, what should happen to the credit report? What should happen to the accounts that have been included in that credit report? The appellees have made many arguments suggesting that the Consumer Data Industry Association and its Consumer Reporting Resource Guide should essentially not count, it shouldn't matter, and, frankly, should be discarded entirely. Well, why does it matter? It matters because the actual METRO II data that is being transmitted is a different thing. The CDIA is the association that actually created the language that is at issue here. The hypocrisy in the argument that the CDIA and the CRRG should just be thrown aside. Can you tell us succinctly what you think should be, what the report should look like? Absolutely, Your Honor. So when a consumer files bankruptcy, the first update that we want to see ---- Chapter 13. Chapter 13. That's correct, Your Honor. Although, frankly, depending upon the chapter filed, the consumer information indicator should be updated. In this particular case, all of the case ---- All of these are Chapter 13. All of these are Chapter 13. That is correct. And so what should it look like? So upon the filing of the petition, Your Honor, we would expect to see that the consumer information indicator be updated to show that the ---- each account has been included in this particular bankruptcy. The public records section should also reflect that a bankruptcy has been filed. And do you dispute that these reports said a bankruptcy had been filed? No. That's ---- that's ---- in the public records section, no, we do not dispute that. And the way that they indicate that a particular account is included is with this D, which means what? The D means included but not discharged. It alerts potential ---- But somewhere it said that D meant no data. Is that ---- So that's ---- one judge has called Metro II alphabet soup, and it can be confusing. The D for no data is the Metro II indicator that you would see in the payment history on a credit report. So if Your Honor were to look at your own credit report, the payment history section that's usually ---- The what history section? The payment ---- the payment history section. Right. So that is the section on a credit report. When you look, it will tell you, you were 30 days late in June of 2016, 60 days late the next month, so on and so forth. The D that Your Honor is referring to is what is reported in that payment history section to reflect no data. The no data, according to the CRRG, is what ---- But those are two different Ds. They mean different Ds. Yes. Yes. They are completely two different Ds that go in two different fields. So once it says on the report that the person has filed for bankruptcy, why does it matter to anyone whether every single account is listed with the D or not? Like what ---- who's going to use that information for anything? Well, anecdotally, I can tell you that I've almost personally lost or one of my clients almost lost his security clearance because if you don't have the CII on the whether or not an account has been included. And there's not an assumption made. But who's going to lend you more money when you're already in bankruptcy? So lending money while you're in a Chapter 13 is such a common practice that most Chapter 13 trustees actually have a cap in terms of what can and can't be borrowed. The Code actually provides for that hypothetical. And in fact ---- Well, it provides for approval by the trustee. Well, the trustee and the court, Your Honor. Right. So in the Chapter 13 context ---- And you're saying that the difference in whether you're going to get the loan or not is whether if there's a particular debt that's included or not included? The ---- that would be decided on a case-by-case basis. The difference would be at a foundational level the yes or no. Are you approved or are you not approved? But then the follow-up is, okay, you are approved, but you're not approved at this interest rate because of X, Y, and Z. Now, I know that the other side would like to say, well, that's because you're in bankruptcy. It's a very natural inclination. But the reality is, and it is in our pleadings, that when FICO calculates credit scores, they do not calculate that score or the derogatory impact that a filing of a bankruptcy has based on the date of discharge. It is the date of filing that matters. So the debtor who is in a Chapter 13 for three years, according to FICO, should have a better credit score than the debtor who is in a 13 for three months. And how does that relate to this D issue? Because the D, the D tells lenders whether or not an account is actually included in bankruptcy. If it's not included ---- Isn't this awfully fine cut in the sense that the notion that an individual account is going to affect lending rather than the overall situation? Let me ask it another way. Is this the end? Is this your only request, or is there something else that you want? In terms of the credit report? When we ask the question, what do you want the credit report to look like? Right. So the credit report should update to show that the account has been included in bankruptcy. Post-confirmation, the balances should reflect the court-ordered terms of the plan. Now, does the original amount of the debt show up? Not in the ---- not the way Metro II has been developed, Your Honor.  Because they wrote it. Under their system, it does not. We are not arguing that there may be another way of reporting it. But the reality is the way that they're reporting this debt post-confirmation does not jive with the language that they have created. In Metro II. In Metro II. But you have to understand, Metro II is the language. If Your Honor were to pull your credit report, I can assure you ---- But it's not ---- let's take a Chapter 7. I understand. But if you look at Chapter 7, and there is a discharge, and the amount due is zero, but the original amount of the debt never shows up? In the way the credit report would look, post-discharge Chapter 7 would reflect a zero balance, a zero past-due balance. There should be a line in the status portion that says discharge Chapter 7. To the extent that the debt was ever delinquent, that would be reflected in the payment history section. So, for example, if you filed a ---- That's what I'm asking you. So that would be true also with regard to the Chapter 13. In other words, it seems to me that the goal ultimately, and I think that an opinion who I wrote whose name I'm not remembering says it, is that to give the information that somebody would want. And it seems to be the information everybody would want is how big was the debt to begin with, and what is their ---- and arguably, what is their obligation going forward, and the fact that it's contingent, i.e., that if they don't pay, the debt may pop back up. So it seems to me that to be truthful information in the Chapter 13 context, you have to attach it to what the debt could be if they don't pay, right? And we don't disagree with that, Your Honor. So is that why ---- that's why I'm asking you, what does this look like? So what it would look like is we would want the ---- and this, again, what you're asking me is, I am operating in the Metro II world, because that is the language that they have given. What Your Honor wants, Metro II doesn't specifically give. But you just said it does, because you said there's a separate payment history section. But there is a ---- the payment history section, Your Honor, will tell you how many days late you were at some point in the past. But it's not going to have an actual number there. Oh, it's not going to have a number? It's not. It doesn't have a number. So but what you're saying is you think it would be okay if you had the original amount plus the revised amount and the payment history. Providing more information is okay with you is what you're saying. That's entirely accurate. The problem is what's being reported is misleading. And this Court has already ruled in Gorman, even if something is technically accurate, it can still be misleading. And this is misleading because you're not actually giving the full picture. You're attempting in your reporting to suggest that this debtor prior to filing was passed to X amount. So does FCRA care if it's misleading if it doesn't matter to anyone? I mean, so it could be misleading in a nonmaterial way. And I'm wondering how we know that this is material. Well, it's material because we've pledged it as such, Your Honor. And frankly, we're at the 12b-6 stage. And if that, frankly, is an issue I think that's readily ascertainable at the summary judgment motion. But we're not there yet because we've been ---- But, like, did you need to plead that your plaintiffs didn't get loans because of these errors? No. I mean, why not, though? Because it doesn't have to be some indication that this harmed someone? Sure. And I think that's what Spokio says. And all of the pleadings suggest that the credit score, the ability to obtain credit, is impacted by this reporting. The Fair Credit Reporting Act does not require an actual denial of credit to plead a case. As a matter of fact ---- And you've alleged that it does affect the credit score, that the difference between being in a Chapter 13 and recording the original debt and being in a Chapter 13 and recording it the way you're arguing it should be recorded is going to affect the credit score. Absolutely, Your Honor. Absolutely. And the other side has made an issue of how many cases we have filed. You would have to understand that before cases are filed, we are looking at them. I can tell you, anecdotally speaking, one trade line, just one trade line updated the proper way. I have seen 100-point swings on credit scores. This is a problem, and it's not going away. And that 100-point swing makes a difference? I mean, aren't these people's scores terrible? No. No, absolutely not. If you're in a Chapter 13, frankly, that is the lie that is told. If you are in a Chapter 13 and you are four years into a Chapter 13, there is no reason that you cannot have a 700 FICO score. That's straight from FICO. But the reality is, for the millions of consumers in a Chapter 13 who are four or five close to discharge and still have a 550 credit score, it's not because they filed Chapter 13. It is because Metro 2 is not being followed, period. So you started to talk about this before, this length of time in bankruptcy. It seems like you're saying this length of time in bankruptcy matters, but I'm not understanding still how the D on the different lines is going to tell us the length of time you've been in bankruptcy. Because, well, there — the D will tell a — it allows a particular lender to see whether or not an account is included in bankruptcy. To specifically answer your question, there are different things that go into calculating a credit score. But, like, you've been telling us that the length of time in bankruptcy is really kind of what matters about whether someone's going to get a loan. So what is the inaccuracy here that relates to that? So the problem — the problem is, if you have a — if the public records section shows that this person filed bankruptcy three years ago, but the actual account doesn't show that it was included, it's just another negative, adverse trade line that's affecting the underlying positive net benefit that filing the bankruptcy four years ago. But it — you still have an answer. What does that have to do with how many years you've been in bankruptcy? I'm sorry. So the D has to — does not have to do with how long you're in bankruptcy. It shows potential lenders that you, as a consumer, have specifically dealt with a debt. It's no longer collectible, and it's subject to a discharge. Those are all calculated into somebody's creditworthiness. So now the answer is, what matters is how many debts you have, not how many years you've been in bankruptcy. No, it's all of the above. A credit report is supposed to be — you should be able to look at a credit report, and it should tell you a story. This person filed bankruptcy on this day. And then on that day, they included all of these accounts. That story gets — is completely misguided. If the story is, on this day, somebody filed bankruptcy, they left out this debt, and because of that, the balance is increasing, the past-due balance is increasing, delinquencies continue to go. So the net benefit of the positive idea that you filed bankruptcy four years ago, you lose all of that, because up here, you're not giving a complete and full picture. What about the willfulness allegation? Do you have one? Absolutely. So the — I thought there was an issue about it that you mentioned. So in the — to the extent that there was an issue of willfulness, there were some — it would not be in the consolidated appeal. What we have alleged is that the investigation process that the Fair Credit Reporting Act mandates just doesn't happen. Experian has their individuals essentially rubber-stamped. But for it to be willful, don't they need to know that this violates FCRA, and isn't this not at all clear? That goes to the hypocrisy of writing a manual that says do X, Y, and Z. But FCRA doesn't require you to follow Metro 2. I mean, maybe we'll say that today, but no one has said that yet, right? No. What FCRA says is you should report accurately. And they developed a language that says this is how you report accurately. We're not saying it's binding. We're simply saying if Congress wants credit reports to look accurate, and there is a language that you developed to report accurately, and you're not reporting in accordance with your own recommendations, and, in fact, what you've said in your brief is that to do so would be illogical, that raises an issue. At least to get us past the 12B6 stage. At least. On willfulness. Yes, absolutely. Okay. Well, your time is up, and we will give you a minute in rebuttal. Thank you. May it please the Court, why don't I just start briefly, I hope very briefly, with where the Court finished, just on willfulness. Yes, under SAFCO, you need to have essentially clearly established law to get a  As Your Honor points out, there isn't any even germ of an idea of that here. So, you know, the only other way to have a claim here then would be to allege a negligent violation with actual damages. There also are no cognizable damages alleged here. I mean, that would be, frankly, an easy way to get rid of all these cases. But it seems like you haven't tried to get us to do that. You're following a different strategy or something here. Well, I mean, the district court, at least in some of these cases, didn't address the cases on that basis. And so we have to do that. But they're all motions to dismiss, right? So we just could decide whatever we want to decide. It's de novo, right? Correct, Your Honor. No question. Now, that theory, there would never be willfulness because there would never be a legal rule. There is a circularity. I'm sorry. Like, if we don't clarify what FCRA requires, then there will never be willfulness. Oh, no, not at all. I don't think that's right, because it's certainly the legal norm can be established through claims of negligent violations where someone has damages. So that can then be used as an excuse. But part of your argument maybe is no one ever has damages in this context. I mean, in this bankruptcy context. Well, look, I'm open to the possibility that it could happen. But I think that the questions about what is happening when a lender is looking at lending in a Chapter 13 situation are very pertinent because, you know, under Gorman, you have the patently inaccurate standard, and then you have it's got to be misleading in a way that's likely to affect credit decisions. A credit decision in a Chapter 13, you have someone with almost all of their income devoted to the Chapter 13 plan. There's going to be a trustee approval required for any new debt. This isn't your normal FICO score-based lending. Basically, you're lending to somebody in a very specialized situation where the lender is going to look at income and collateral. And, you know, FICO is probably not going to come into play. I don't want to get too far into that. That's not obviously in the record. And I'm starting to get anecdotal versus anecdotal. But just in response to your question, it may be that there never will be a situation like that because, in theory, it shouldn't be affecting anybody's decision. I mean, so that goes to, like, whether anyone will ever have damages for negligence. But it may also go to this, whether this is materially misleading or not. And so we may need to kind of understand this. And I'm wondering whether we can understand it at the 12v6 stage. Well, but I think that the way that figures in at the 12v6 stage is that, you know, the plaintiff does have to allege a plausible theory of the claim, at least on the elements. I'm sorry. Why isn't it plausible that and plausible, I mean, not necessarily right, but plausible, that a credit decision could be affected, for example, for somebody who is well into a Chapter 13 plan, has been paying all along, but the creditor can't tell from the credit report even that much and can't tell how much they're going to have to pay in the future if they continue to pay. All they can tell is that there was a Chapter 13 and that there were some debts in the past which weren't paid and which may be growing in the meanwhile, I guess, I gather, on the credit report because they're still not being paid, even though the judgment is that they don't have to be paid right now. Right. So, I mean, why isn't the most the accurate why wouldn't the goal be to get the accurate information, which is the debt was X amount, there's a Chapter 13 plan, under the Chapter 13 plan, they will only have to pay Y amount, but it's a contingent plan, and if they don't pay Y amount, then it goes back to X amount. I mean, isn't that the story, the actual story? Well, Your Honor, I actually don't know. And how long they've been paying, perhaps. And I have two basic answers to that, and there's a short one and a longer one. The short one is that the FCRA is not about requiring the best of all possible worlds, it's a prohibition or a cause of action based on something being inaccurate as opposed to the other. So it doesn't have to be, or at least misleading, to say that this person has a debt of X amount when, in fact, if they pay Y amount for the next five years, there won't be a debt of X amount. Well, because when a creditor looks at it, they see that this is someone who's in Chapter 13 so that they know that these accounts and the amounts owed are contingent on completion of the Chapter 13 plan. But that's not what it is they're going to have to pay. I mean, the Chapter 13 could require them to pay 75 percent of the debt or could require them to pay none of the debt. This is true, but I would submit a couple of things. One is it's, frankly, not reasonable to expect credit reporting in the FCRA to be dealing with that, because if you've seen bankruptcy confirmation orders of Chapter 13 plans, it's not as though it would be a simple matter for the CRAs or the creditors to plug in, here's what's owed under the plans. They differ from court to court, maybe case to case. But I gather that this is done sometimes, a fair amount of it. It's not at all clear to me. I mean, certainly that's not pled here. I'm not familiar with it being done. And I think it would be hard to do because, again, you get a Chapter 13 plan. It doesn't list creditor by creditor. Here's what you're owed. Here's the new debt. It says this class gets this, this class gets that. It's a direction to the trustee as to how to disperse funds. I think that essentially, you know, the creditors basically sort of view it as out of their hands. It's in the trustee's ballpark. They're not ---- Kagan. Well, let me ask you a more abstract question. I mean, you're being somewhat persuasive about practical considerations. But the decisions that have been issued by, you know, most of the district courts and your argument, it's much more abstract than that. It's basically based on this notion on bankruptcy concepts and the question of whether there is still a debt or there isn't a debt and whether the expungement and there's all kinds of material in the briefs which, you know, what's a debt and what's an expungement and whether it still exists and all. Isn't the FICRA way to go at this is the way you were just going at it, i.e., what makes sense to ask under FICRA rather than any abstract concept about what's what the bankruptcy situation is here? Because, I mean, the real situation is as I described it. I.e., there was a debt. It doesn't have to pay it now. The fact that it doesn't have to pay it now should be of some interest to creditors and that what the amount is that it doesn't have to pay. And but it's contingent. And if he doesn't pay it, then he may have to pay it. That's the truth of the matter. And to start getting into abstractions about go ahead. I largely agree with you. I think the abstractions come in, in part, because Gorman creates this bifurcated test for inaccuracy, and you've got the question of patently inaccurate versus misleading in a material way. Right. They're arguing about whether it's patently inaccurate or not. And so you get into these technical questions about legally or not. Let's assume it's not patently inaccurate. But why is it misleading in a way that can be expected to adversely affect creditors? So the reason it's not is because, frankly, who is going to be misled? It's not — remember, the test is not, is there more information that, in a perfect world, I would like to have so that I, as a creditor, don't have to do the work of looking at the — pulling up the confirmation, you know, the plan itself. The question is, is there something misleading in here? It's not misleading to have a report that says, this person's in a Chapter 13. This is the debt that's outstanding. There's nothing in the Bankruptcy Code or in FCRA that obligates creditors or credit reporting agencies — Does it even say that there's a confirmed plan? It just says they're in Chapter 13, right? I believe it does, because I believe that's what the statutory requirement is, to report the chapter, but not — I don't — they don't generally report, I think. It's not a — they don't report status updates. Right. So it could be a Chapter 13 that's never going to have a confirmed plan, and there isn't any judgment. Well, sure. But, look, remember, first of all, in Chapter 13, I mean, if we talk about what it could be, two-thirds of Chapter 13's, according — you know, the Supreme Court just — Well, that's why it's — to be accurate, you'd have to have the contingency reflected, which to me means you would have to put the original debt in as well. Well, I guess where I would differ slightly is you're saying to be accurate and — To be not misleading. And, no, I don't think that's right. I think it's to be more complete. You know, this Court just had a case a few months ago, Shaw v. Experian. It's 891 F. 3rd, 749, where the Court said, you know, imprecision alone is not actionable. Right? You don't — you have to not be misleading. You don't have to include all of the information that someone might like. And it's — again, I guess the question is what — how is someone going to be misled? They might not know what is happening in the Chapter 13, but it's not that they're reading something in the credit report that is telling them something that isn't happening or that's wrong. And important, I think, to touch briefly on this — the FICO score aspect. Again, there are no allegations here. But why isn't it wrong, and maybe the — to say that they owe $10,000 when, in fact, the — the plan is that they owe $50 as long as they pay the $50? Because any reasonable — any creditor who might possibly be considering lending to somebody in a Chapter 13 is going to look at that and say, okay, there is a debt of $10,000 or whatever subject to a plan that may go away. Now, first of all, they're not misled because they're going to understand it's contingent. Second, what decision are they basing on? Kagan. Let me back up a minute. Yeah. The way it's reported, I understand, is not necessarily subject to a plan. It may not be a plan yet. Likely subject to a plan, potentially. Possibly subject to a plan. It's certainly contingent, right? That's right. And if the person is lending and has to get trustee approval in the real-world situation, how — in what real-world scenario is this possibly affecting their decision about whether to lend to the person? But so is this relying on inquiry notice being okay once there's a bankruptcy notice on the report? Well, inquiry notice is — Because usually inquiry notice is not okay, right, in this context. But maybe this is an exception? Well, but I think we're not — again, we're not — you know, we're not talking about a statute of limitations. The question here is, is about whether they're being misled into thinking something is true that is not actually true. So it's — I mean, the fact that they're in Chapter 13, they're being notified that this is a debt that is subject to something in Chapter 13, whether it's a plan or they're going to be proposing a plan. But secondly, I think you have to take it the next step to, because remember, the test is likely to affect the actual credit-granting decisions. How is that going to play out when they're actually thinking about making the loan? They're having to deal with, are they going to have trustee approval? They need to know how much is going — of the income is going to the Chapter 13 plan and how much is available to — But is this like all this detail about how you have to get permission from the trustee and all this, is that judicially noticeable? Is it a fact or a law? How do we — I'm really — No. I understand a lot of that is — is law, because there are legal restrictions on what someone can borrow and the circumstances under which they can borrow in a Chapter 13. But also I think that in order to plausibly plead their claim on a theory of misleading in a way likely to affect credit decisions, they've got to plead a way that it's affecting, in some sense, it affects FICO scores for — I mean, first of all, I don't know what FICO is doing or are they being misled into doing something, but saying it affects FICO scores in a situation where they haven't even pled reason to think that FICO scores are controlling the credit-granting decisions in a Chapter 13. None of this is — is pled in the complaint. One last thing I should say I think that's important is, since there's all this talk about Metro II, this is sort of like a late-arriving, the Yaris case. The plaintiffs pled without even mentioning Metro II. And Metro II — and when they did plead Metro II, they made clear it's not an industry standard in the sense that it's widely followed in every respect, and people are misled if it's not followed. They plead, then, in fact, it's routinely ignored. Each of the complaints that mentions Metro II says creditors routinely ignore it. So having — excuse me — CDIA promulgate something with the information that they're hoping to collect from creditors and a format for that, it's an, I guess, industry standard in the sense that the industry created a format for what they would like to get. That's completely different from pleading that something is regularly followed so that deviation from it is misleading. They haven't pled that, but couldn't plead that. They do — they do allege that the Metro II format is the credit reporting industry standard. The credit reporting industry at large depends on Metro II. Right. But that's — those are some nice general words that allive the difference between a standard for getting information from furnishers and a standard for what gets reported in consumer reports. But separate and apart from that, each of those complaints also pleads specifically creditors routinely ignore the Metro II requirements. So it's not actually pled as something that's — But, I mean, this is the problem with the current status of the case, I mean, which really is, is this an appropriate 12B6 and or should we allow an amendment? Because you stood up and you said, when somebody is in Chapter 13, the FICO — there's all sorts of allegations in the complaint about how this could affect FICO scores. So you then stand up and say, well, but a FICO score isn't going to affect a creditor when somebody is in Chapter 13. Well, how do I know that? You don't know that, but you would need some sort of allegation about how — Well, it says — it says — I mean, I think there are sufficient allegations that the FICO score affects who is given credit. And you're saying, but not in this circumstance, and we don't have any information. Because, I mean, that — talking about FICO scores is — is really generic. I think it's telling that in all of these complaints, there's no allegation of any single instance involving any of these plaintiffs where they were trying to get credit, but they had trouble. So if we sent it back and they amended the complaint to say that the FICO score affects lending even of people who are in Chapter 13, that would be the end? I mean — We could go forward? No. I don't think that's right, because it would still have to be something that — where the effect was — the effect on FICO scores would have to be through something misleading. No one is — I mean, there's no allegation that — that FICO, that organization, is being misled into — in what they're doing. I don't know the basis of their algorithm, but they certainly — no reason to think that — The algorithm used by FICO in determining a consumer's credit score are premised on the METRO II data received comporting with the CDIA, i.e., its recommendation for accurate reporting. If a resulting FICO score is lower, a consumer will be considered a higher credit risk, resulting in less favorable lending terms. Yes. And you think a consumer isn't good enough because it's not these consumers? Well, I think two separate things. For damages purposes, that would be true. But I think all I'm saying about these consumers outside of the damages context is that it's telling that this is all this — it's like a theory in search of a problem. Right? We don't like the way it's reported, but there's no — other than counsel saying anecdotally sees there's a problem, there are no allegations suggesting any problems. I thought those were fairly specific allegations, and then you're the one who's standing here telling me that — not implausibly, that no one's going to — that with regard to people in Chapter 13, the FICO scores really don't matter. But I don't have any evidence of that. But you would need some sort of plausible allegations that this is — that what is reported is, A, misleading to people who are particularly in light of plaintiffs' own allegations. Well, I understand it to be saying it's going to influence the FICO scores because the FICO scores are based on these conventions, and FICO scores are going to influence lenders. And you're saying, no, that's not true because it doesn't apply to people in Chapter 13. But that last part — I'm saying it's not true at both ends because I'm saying that they also, you know, implicit in the first part of that is the idea that the FICO score is affected because it's understood that everyone follows what Metro 2 recommends. But he's saying whether there are these Ds or not affects the FICO score. Is that just — you're disagreeing with that? Well, first of all, a few things. On the Ds, these are a separate thing. Only two of the plaintiffs here actually have alleged a claim based on the D thing. None of them, according to their complaint, raised that in their dispute letters, which they would have to have done. Right? The dispute letters here are all about saying you should have listed my debt as what it was under the plan, not under, you know, you should investigate how it should be reported in bankruptcy. There's no allegation that the dispute letter said, you know, put a D on or note account by account that it's in bankruptcy. But separate from and apart from what's alleged, the idea that the FICO scores are a result of something being misleading is also not plausible because it's — these complaints all allege, essentially, that these are not routinely followed standards. It's not that someone continuing to report the outstanding debt is what it is. So maybe I'm gathering that you're not really contesting that having the Ds or not Frankly, I have no way of knowing whether having a D or not affects — I mean, it would be bizarre to me if it does, but I can't speak for FICO's algorithms. They're not a party here. But the idea that they're being — I mean, if the litigation continued, would we get discovery into what FICO does or — You know, I suspect that it would — the case would go way short of that on other grounds. But I think — I mean, it would be bizarre if FICO were doing — were basing things on the D because you have credit reports that show someone is in a Chapter 13 bankruptcy. And, you know, the whole thing just seems — that said, I mean, they're not here, and I don't know FICO's algorithms, but for that to be actionable, for the FICO score to result in something being actionable here, it would have to be the result of someone being misled into — it's not — and the FCRA is about something being inaccurate, right? And inaccurate includes misleading in a way likely to affect credit scores, but it's not about someone has deviated from what CDIA may have asked people to report apparently unsuccessfully, according to plaintiff's allegations. That's not misleading. All right. You are way, way over your time. So thank you very much. Thank you. You've been very helpful, and we'll give you five minutes to make up for the time, if you want it. But you don't need to use it. Thank you, Your Honor. Just a quick — a few points. We're getting hung up on the word routinely. There are 300 million Americans in the U.S. Counsel has stated over and over again that we filed 200 lawsuits. I think 200 is enough to equate to routinely, but if this panel was so inclined, I'm happy to — So the other side has argued that we've sort of done — we're being two-faced in the sense that we're saying that Metro 2 should be followed, but it's routinely — Can I ask a question? Does Metro 2 and or CDIA or whatever it's called have any prescription other than this D thing? No. No. So it doesn't — In terms of — what a non-misleading credit report might look like, there is no industry standard for that. There's only the industry standard that you have a D. But there's no industry standard that requires that you say what the actual plan provides. Right. So the Consumer Reporting Resource Guide is sort of like the manual, if you want to call it Bible, of how to report debts. Okay. And there are examples given. And that's what I want to impress upon this panel, is that this is a language that, frankly — That's what I'm asking you. But is it just the D, or does it tell you the new amount of the debt under the plan? It instructs — that gets me to my next point, which is that Your Honor wanted to know earlier whether or not a trade line would show that a plan has been confirmed. Experienced counsel said they didn't know. They should know because they wrote the is you update the balance and the past-due balance. That is the only way under Metro-2 that a lender would know that a plan is confirmed because they would see — But does Metro-2 or anything else, any other trade practice prescribe any — that's my same question again. Prescribe any — does it prescribe that you update the — you reflect the plan amounts rather than the — That is exactly — yes. That is exactly what it says to do. It is unequivocal. But that's not Metro-2. That's something else? No. That is — that is — Metro-2 is the — the data that's being transmitted. The CRRG is the manual that says how to report under Metro-2. That manual specifically unequivocally states that upon confirmation, to the extent balances and past-due balances were ever delinquent or the same, should be changed. So if you have a $10,000 — Is that in any of your complaints? Yes. Well, so far I haven't found it, but I'll take your word for it. Assuming it's — assuming it's not, Your Honor, that is a very simple amendment. And we're still at the 12b6 stage, which goes to my last point. But aren't they saying that this Metro-2 matter is not binding to them? It's — we're not arguing that it's binding. What — what we're — what we're suggesting is that Metro-2 is their language that they literally developed, and they're in front of this panel saying, don't follow it, it's illogical. They wrote something, and they're telling the panel that it's illogical. They've never — they've never — Well, they're saying it's not practical. And presumably, if the case was — went forward, they would be able to prove that it is impractical. Again, those — and again, those, frankly, I think are factual issues, whether or not a lender is going to be — I mean, it does sound that it would be pretty difficult, you know, for each trade line what the actual debt was reduced to. How would you do that? In terms of — Monthly. How would — how would the reporter, the furnisher, and or the credit company know — Well, in terms of how you would figure that out, so what the CRRG instructs is that if they can't figure it out from the plan, then they should pick up the phone and call their legal department. That's — that's what the CRRG — Who's the legal department? The — the data furnishers. So Experian is supposed to have their legal department deciphering everyone's bankruptcy plan? No. No, not at all. That's — that's the data furnisher. The — the issue of the balance, candidly, that's a better argument for the bureaus. The data furnishers, however, can't make that argument, and neither of them can make that argument for the past-due balance. And the data furnishers can't make it because they're supposed to know what's in the plan? Correct. Wait, who — I'm sorry. Who are the data furnishers? Data furnishers are your Bank of America's Chase — The creditors. Creditors, sorry. In the thicker world, we call them data furnishers. So the past-due balance is binary. It's black and white, yes or no. There is no, well, how — how much are you past due? What they have suggested in their manual is that that past-due balance gets updated. That's how you know a plan has been confirmed. It's a yes or a no. With respect to the balance, the simple — as debtors counsel — I mean, it's a yes or a no in the sense that you put down zero? Correct. It's — it's a zero-sum game. But that's not — I mean, my problem here is that that's not really accurate either because it's contingently zero. But that's not what — and that's essentially what the Albuck court said in its opinion was that just because — assuming that what we're arguing isn't, in fact, accurate, doesn't necessarily mean what they're arguing is also not accurate. That's the point, is that we want to get somewhere that when someone is looking at this report, they have a clear understanding of what has transpired. The ultimate problem here is that the language that they've required, it doesn't allow them to report what they're saying that they want to report to this panel, which is, at some point, this debtor was delinquent, and this is the amount that they were delinquent at the time of filing. Then a plan was proposed, a plan was approved, and the debtor moves on. They don't have in their own language a way of articulating that nuance. What they have said, what they have said to get around that, their own solution for this, is to update the balances and update the past-due balances. That's — that's what they have prescribed. Okay. Your time is up. Thank you very much. Thank you, Your Honor. Thank you all for your arguments in this complex case. Two cases, Jarris v. Equifax and Green v. Experian, are submitted. We'll go to both an A, which I don't know how to say, versus SGs, and then we'll take another break.
judges: Berzon, Friedland, Dominguez